UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KARLOS CULBERSON, | ) )  ) |
| Petitioner, | ) ) |
| v. | ) ) ) |
| BILL STANGE, | ) ) ) |
| Respondent. | ) ) |

Case No. 4:20-cv-00784-MTS

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Karlos Culberson's Petition under 28 U.S.C. § 2254 for writ of habeas corpus. For the following reasons, Petitioner's § 2254 Petition is denied.

**I.    Procedural History**

Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. In January of 2013, he was charged in the Circuit Court of St. Louis City, as a prior and persistent offender, with murder in the first degree, one count of armed criminal action, and one count of resisting arrest. The jury found Petitioner guilty on all three counts, and the trial court sentenced him to concurrent sentences of life without parole for the murder, twenty years for armed criminal action, and four years for resisting arrest. Petitioner's convictions were affirmed on appeal. *State v. Culberson*, 484 S.W.3d 371 (Mo. Ct. App. 2015) (per curiam); Doc. [9–6].

Petitioner filed a motion for postconviction relief under Missouri Supreme Court Rule

1

29.15. An evidentiary hearing was held on the matter and the motion court issued findings of fact and conclusion of law denying Petitioner's Rule 29.15 motion. Petitioner appealed the motion court's findings, and the court of appeals affirmed the motion court's ruling. *Culberson v. State*, 591 S.W.3d 10 (Mo. Ct. App. 2019) (per curiam); Doc. [9-11]. On June 15, 2020, Petitioner filed a writ of habeas corpus in this Court pursuant to § 2254. Doc. [1].

## II.     Factual Background

On January 29, 2013, Steve Woodson (Victim) was talking to people in a van while standing in front of the house he shared with his uncles, John Woodson (John) and Ronnie Woodson (Ronnie), and other family members. John went to the door to investigate a noise and witnessed Petitioner—whom John knew because Petitioner had been a friend of Victim— approach Victim and shoot him multiple times in the back. John shouted that Petitioner had shot Victim and ran into the street. Petitioner and the van both fled. John stated Petitioner was "zig-zagging" or staggering and appeared to be under the influence of drugs. John approached Victim, who mumbled Petitioner's name. John then got in his vehicle to look for Petitioner while other family members gathered around Victim and called the police. John later identified Petitioner in a photo line-up as the person who shot Victim. Likewise, Ronnie testified he was awakened by gunshots and went outside where he saw Petitioner, standing over Victim, pointing a gun at him. Petitioner then walked away, and the van drove away, running over Victim's body in the street.

Police officers later located Petitioner in an alley. Petitioner did not comply with police orders to stop and show his hands. The officers tackled Petitioner, but he continued to push and struggle against the officers and flail his legs trying to kick them. After Petitioner was handcuffed and seated, he spontaneously stated he shot Victim and left the gun at the home of Steven Stevenson. Petitioner repeated the statements numerous times, in a manner the officers described

as "babbling" or "chanting."

The medical evidence showed Victim had been shot six times in the left back, left shoulder, and left thigh. Two of the bullets went through Victim's aorta and heart, causing his death. The bullets tracked upwards, but the medical examiner testified he could not say to a degree of medical certainty how the shooter and Victim were situated during the shooting.

For the defense, Petitioner called Victim's brother David Jones (Jones), who testified that as Petitioner was being arrested, Jones heard Petitioner say, "I didn't do nothing … I didn't kill him." But Jones agreed on cross-examination that the officers made him leave before Petitioner was handcuffed and seated. Petitioner also presented testimony from another neighbor who heard the shots. She testified that by the time she walked from her bedroom in the back of her house to the front of the house she did not see a shooter, but she did see a van drive away. In response to defense counsel's question whether she knew if the shooter was someone in the van, she stated she did not know.

Out of the presence of the jury, the State moved to prevent Petitioner's counsel from arguing as an alternative theory that someone in the van shot Victim because there was no evidence supporting this theory. Counsel for Petitioner argued that there was a logical inference that someone in the van shot Petitioner because it sped away after the shooting. The court granted the State's motion *in limine*. During closing arguments, the defense pointed to inconsistencies in the evidence to argue John did not in fact witness the shooting. As stated previously, the jury ultimately found Petitioner guilty on all three counts and the trial court sentenced him to concurrent sentences of life without parole for the murder, twenty years for armed criminal action, and four years for resisting arrest.

### III.     Legal Standard

The proper standard of review for habeas relief is dependent upon whether the ground for relief was deemed procedurally barred or whether the post-conviction state court adjudicated the ground on the merits. *Compare Lonholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (giving the standard of review for grounds decided on the merits), with *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (giving the standard of review for grounds that the state court determined were procedurally barred). Procedural defaults generally rest upon "adequate and independent state grounds," so defaulted claims are typically barred from obtaining federal habeas review. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman*, 501 U.S. at 729–31. However, a ground that was procedurally barred may be reviewed on the merits if the petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. Alternatively, a petitioner can avoid the procedural bar to review if he can show that he is actually innocent and his conviction resulted from a substantial violation of his rights. *Murray v. Carrier*, 477 U.S. 478, 480 (1986).

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), though such relief is "limited and deferential." *Lonholt*, 327 F.3d at 751. Under AEDPA, § 2254(d), habeas relief is only permissible if the state court's determination:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established Federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458, 4647 (8th Cir. 2004) (quoting *Early v. Packer*, 547 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." *Id*. "Clearly established" Supreme Court law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *see Payton*, 544 U.S. at 141 and *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." *Carter v. Kemna*, 255 F.3d 589, 592 (8th Cir. 2001) (quoting *Williams*, 529 U.S. at 410-11 (2000)).

When reviewing whether a state court decision involves an "unreasonable determination of facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of

5

fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable considering the evidence of record. *Id.*

## IV.    Discussion

Petitioner asserts two claims for ineffective assistance of counsel, three claims for trial error, and one claim for prosecutorial misconduct. *See* Doc. [1].[1] Ground Four is procedurally defaulted.

### a.    Ground Procedurally Defaulted on Direct Appeal

**Ground Four: Petitioner's ground for relief is that Respondent's custody over him violates the Fifth and Fourteenth amendments to the United States Constitution in that the trial court permitted testimony from a witness that Petitioner was in a "voluntarily-drugged condition." Doc. [1] at 24.**

Petitioner alleges that the trial court plainly erred by allowing testimony that Petitioner appeared under the influence of drugs, which violated Petitioner's right to be tried only for the offense charged. Doc. [9-6] at 7. Petitioner raised Ground Four on direct appeal, but Petitioner "concede[ed] the issue was not preserved for appeal." Doc. [9-6] at 7. The court of appeals granted Petitioner plain error review. *Id.* Reviewing the claim for plain error only, the court of appeals rejected Plaintiff's contention. The court of appeals noted that where "guilt is established by overwhelming evidence, it is unlikely that the challenged evidence would have had a decisive effect on the jury." *Id.* at 8. In other words, "when guilt is established by overwhelming evidence" manifest injustice is unlikely. *Id.* The court of appeals found that "[e]ven if [John's] testimony that [Petitioner] appeared to be under the influence of drugs was improper, the record established overwhelming evidence of guilt through the testimony of an eyewitness to the shooting and [Petitioner's] confession to shooting Victim." *Id.*

A state court's plain error review of a defaulted claim does not cure the procedural default.

---

[1] Ground five consists of two sub-parts.

6

*Clark v. Bertsch*, 780 F.3d 873, 876–877 (8th Cir. 2015); *Giammanco v. Wallace*, 4:14-cv-01739-CDP, 2018 WL 3219652, at *4 (E.D. Mo. July 2, 2018). Petitioner cannot overcome the procedural bar and obtain federal habeas review because he cannot show cause, actual prejudice, or innocence. Petitioner cannot show cause for his procedural default, nor does he attempt to do so. *See* Doc. [1] at 25-26 (Petitioner conceding that defense counsel did not object to the testimony and did not include the issue in his motion for a new trial). Further, Petitioner cannot establish actual prejudice or innocence given the overwhelming evidence of his guilt. *See* Doc. [9-6] at 8 ("[T]he record established . . . testimony of an eyewitness to the shooting and [Petitioner's] confession."). Ground Four is procedurally defaulted and denied.

> b. **Grounds Decided on the Merits in State Court Direct Appeal Proceedings**

Grounds Two and Three were decided on the merits by the court of appeals in Petitioner's direct state court appeal.

**Ground Two: Petitioner's ground for relief is that Respondent's custody over him violates the Fifth and Fourteenth Amendments to the United States Constitution in that the trial court abused its discretion in excluding evidence that suggested the victim was shot by someone other than Petitioner. Doc. [1] at 11.**

"[A]dmissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief." *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). Thus, a "federal court will reverse a state court evidentiary ruling 'only if it infringes upon a specific constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'" *White v. Blair*, 4:19-cv-01837-SRW, 2022 WL 343423, at *2 (E.D. Mo. Feb. 4, 2022) (quoting *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992)).

Petitioner alleges that the trial court abused its discretion by excluding evidence that the victim had drugs in his possession and in his system. Doc. [1] at 11. Petitioner argues that this

7

evidence tended to prove that Victim was involved in a drug transaction with someone in the van at the time of the shooting, creating a reasonable inference that someone in the van connected with the drug transaction shot the victim. The court of appeals rejected this argument on Petitioner's direct appeal. Doc. [9-6] at 4-7. Out of the presence of the jury, the State moved to prevent Petitioner's trial counsel from arguing an alternative theory that someone in the van shot Victim because there was not any actual evidence to back up the theory. The trial court did not allow Petitioner's counsel to argue an alternative shooter theory in closing. The trial court stated, "They have evidence of where the shots were from, who shot, the angles, all of that. They have evidence. All right? You don't. You don't. You just can't throw something out there." Doc. [9-1] at 522. The court of appeals also rejected Petitioner's argument because the evidence only showed that "someone in the van had the opportunity to shoot" and that this "type of minimally probative value evidence is outweighed by its tendency to confuse or misdirect the jury." *Id.* at 5. "Speculation that an unidentified person in the van may have been involved in a drug transaction with Victim and may thus have shot Victim cannot reasonably challenge the direct evidence of an eyewitness and Petitioner's own confession." *Id*. The court of appeals also noted that even if the trial court's exclusion was erroneous, "the State rebutted any presumption of prejudice by showing [that] the evidence of [Petitioner's] guilt was overwhelming." *Id.*

Petitioner fails to show how the trial court's exclusion of this evidence forms the basis for federal habeas relief. First, Petitioner's mere passing reference to the United States Constitution does not show that the state court ruling infringed his specific constitutional rights. Doc. [1] at 15; *see also White*, 2022 WL 343423 at 2 ("Although Petitioner asserts the alleged trial court error violated his constitutional rights, he provides no support or argument for how those rights were violated."). Second, Petitioner cannot overcome the heavy burden of showing that the state court

8

ruling was grossly or conspicuously prejudicial because evidence of his guilt was overwhelming. As noted by the court of appeals, one witness testified that Petitioner shot the victim, another witness testified that he saw Petitioner standing over the victim with a firearm, and Petitioner himself admitted that he shot the victim. Doc. [9-6] at 6. Furthermore, the jury was aware of Petitioner's suggestion that someone else shot the victim. Petitioner presented arguments concerning inconsistencies between the eyewitness accounts and the physical evidence. Ultimately, the jury determines the credibility of the witnesses, weigh the evidence, "and may accept or reject all, part, or none of a witness' testimony." *Id*. at 7 (citing *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010). Ground Two is denied.

**Ground Three: Petitioner's ground for relief is that Respondent's custody over him violates the Fifth and Fourteenth Amendments to the United States Constitution in that the trial court abused its discretion in sustaining the State's objection to Petitioner's closing argument that someone else shot the victim. Doc. [1] at 16.**

"Because a federal court reviewing a habeas petition has a 'less reliable vantage point for gauging the impact of closing argument on the overall fairness of trial . . . an exceptionally limited review of the issue' is appropriate." *Smalley v. Pash*, 4:13-cv-02259-CDP, 2015 WL 2353164, at *5 (E.D. Mo. May 15, 2015) (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)). "As the Supreme Court has stated, '[t]he appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Smalley*, 2015 WL 2353164 at 5 (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Petitioner alleges that the trial court abused its discretion in sustaining the State's objection, which prevented Petitioner's potential closing argument that someone in a nearby van shot Victim. Doc. [1] at 16; Doc. [9-4] at 8. The court of appeals considered this argument together with Ground Two and rejected this argument for the same reasons it rejected Ground Two, discussed *supra*. Doc. [9-6] at 4-7.

9

Petitioner fails to show that the trial court's ruling denied him due process because even if the trial court erred, the jury was aware of Petitioner's argument. Petitioner "did in fact suggest through questioning that someone in the van shot [the victim, and although] he was not permitted to make further arguments, the suggestion was before the jury and the jury did not find it persuasive." *Id.* at 7. Using exceptionally limited review, the Court cannot conclude that the trial court's ruling denied Petitioner due process, especially when the jury was aware of Petitioner's argument. *See Smalley*, 2015 WL 2353164 at 6 (denying a petitioner's habeas claim "that his right to due process was violated when the trial court sustained the prosecution's objections to portions of defense counsel's closing argument."). Ground Three is denied.

c. **Grounds Decided on the Merits in State Court Post-Conviction Proceedings**

Grounds One and Five were decided on the merits by the court of appeals after post-conviction proceedings. Petitioner claims trial counsel was ineffective for not having a witness testify at his trial and for failing to investigate recordings. To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id*. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.  To establish the "prejudice" prong, the movant must show

"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696. To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id*. at 100-01. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

**Ground One: Petitioner's ground for relief is that Respondent's custody over him violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that trial counsel was ineffective for failing to call an available witness at trial. Doc. [1] at 5.**

Petitioner alleges that trial counsel was ineffective because counsel failed to call Grace Davis (Davis) as a witness. Doc. [1] at 5. Petitioner claims that had counsel done so, Davis would have testified that during the crime "she heard gunshots; she saw the shots being fired from a van;

11

at the time the shots were fired [Petitioner] was standing across the street from the van; she did not see [Petitioner] holding a gun; and [Petitioner] was not the shooter." Doc. [9-11] at 4. The court of appeals acknowledged this, but "defer[red] to the motion court's credibility determination" that counsel did not call Davis as a witness to avoid conflicting testimony with that of another witness. *Id.* at 5. "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (internal quotations omitted). Trial counsel testified that she did not call Davis because "her testimony conflicted with someone else's." Doc. [9-7] at 29. Petitioner's counsel investigated whether to call Davis as a witness but also considered all the other evidence that would be presented at trial.

The court of appeals properly acknowledged the "strong presumption that counsel's performance was reasonable and effective" and found that Petitioner did not overcome the presumption attached to trial counsel's witness selection strategy. Doc. [9-11] at 5. The court of appeals found that because Petitioner's counsel believed Davis's testimony would not have unqualifiedly supported Petitioner's position at trial, it was a reasonable trial strategy not to call her to the stand, and that the failure to call Davis as a witness did not constitute ineffectiveness of counsel. The court of appeal's decision did not result in a decision contrary to or involve an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts. Ground One is denied.

**Ground Five: Sub-part one of Petitioner's ground for relief is that Respondent's custody over him violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that his trial counsel was ineffective because his counsel did not investigate relevant recordings. Doc. [1] at 30.**

Petitioner alleges that trial counsel was ineffective because trial counsel did not investigate recordings between Petitioner and Detective Wallace Leopold (Detective Leopold), which would have provided evidence that Petitioner was not under the influence of drugs and did not shoot

Victim. Doc. [1] at 30. Trial counsel, Petitioner, and Detective Leopold testified at the evidentiary hearing concerning this argument. Doc. [9-11] at 8. In contrast to Petitioner's testimony that a recording existed, Detective Leopold testified that the recording between him and Petitioner was deleted because no interview was conducted. *Id.* Detective Leopold testified that he briefly spoke with Petitioner, but he did not conduct an interview because Petitioner invoked his right to counsel and did not answer any questions. The court of appeals noted that the motion court made an "explicit finding that Detective Leopold's testimony was credible" and an "implicit finding that [Petitioner's] testimony to the contrary was not credible." *Id.* The court of appeals later deferred to the motion court, and thus, rejected Petitioner's claim. *Id.*

The court of appeal's determination did not result in a decision contrary to or involve an unreasonable application of *Strickland*, and the decision was not based on an unreasonable determination of the facts. Trial counsel investigated the matter and discovered that a recording between Petitioner and Detective Leopold did not exist. Also, Petitioner was not prejudiced by trial counsel's failure to discover the recording before it was deleted because the brief recording that existed only showed Petitioner invoking his right to counsel. In other words, the recording would not have changed the outcome of the proceeding. Sub-part one of Ground Five is denied.

**Ground Five: Sub-part two of Petitioner's ground for relief is that Respondent's custody over him violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that the State committed a *Brady* violation. Doc. [1] at 30.**

"Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *White v. Steele*, 853 F.3d 486, 490 (8th Cir. 2017) (citing *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016)); *see also Brady v. Maryland*, 373 U.S. 83 (1963). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

13

different." *White*, 853 at 490 (citing *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013)).

Petitioner alleges, as an alternative argument for Ground Five, that the State committed a *Brady* violation when it did not turn over recordings concerning Petitioner. Doc. [1] at 30. The court of appeals rejected this argument for essentially the same reasons it rejected sub-part one of Ground Five. Doc. [9-11] at 10. The court of appeals found that, "Detective Leopold's testimony providing [Petitioner] was not interviewed and did not answer any questions establishes [Petitioner] was not prejudiced from any alleged ineffectiveness on the part of counsel in purportedly failing to investigate and subpoena all recordings of conversations between Detective Leopold and [Petitioner]." *Id*. at 8.  The court of appeals deferred to the motion court's explicit finding that Detective Leopold's testimony was credible and the motion court's implicit finding that Petitioner's testimony to the contrary was not.  Detective Leopold's testimony that Petitioner was not interviewed and did not answer any questions established that Petitioner was not prejudiced due to the absence of the brief recording between Detective Leopold and Petitioner. The court of appeals ultimately determined that Petitioner failed to show there was a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The court of appeals decision was not contrary to or involve an unreasonable application of clearly established federal law or resulted in a decision based on an unreasonable determination of the facts. Ground Five subpart two is denied.

## CONCLUSION

Accordingly, all of Petitioner's grounds for relief are denied.

**IT IS HEREBY ORDERED** that the Petition of Karlos Culberson for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a

denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

Dated this 29th day of September, 2023

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE